**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**LARRY L AMOS, ON BEHALF OF**                                    **PLAINTIFF**
**HIMSELF AND ALL OTHERS**
**SIMILARLY SITUATED**

**v.**                                    **5:07CV00050-WRW**

**BAYVIEW LOAN SERVICING LLC**                              **DEFENDANT**

<u>**ORDER**</u>

Pending are Plaintiff's First Motion to Certify Class (Doc. No. 37);  Plaintiff's First

Motion to Compel Answers to Discovery (Doc. No. 40); and Plaintiff's Motion for Hearing on

Class Certification (Doc. No. 58). Defendant has responded (Doc. Nos. 47, 48). Plaintiff's

Motion to Certify Class (Doc. No. 37) and for Hearing on Class Certification (Doc. No. 58) are

DENIED without prejudice. Plaintiff's Motion to Compel (Doc. No. 40) is DENIED as MOOT.

**I. BACKGROUND**

Plaintiff is a resident of Jefferson County, Arkansas.[1] In January, 1998, Plaintiff obtained

a loan from Mortgage Plus Equity & Loan Corporation.[2] The loan was closed in Arkansas

around January 30, 1998.[3] A line at the bottom of the note reads, in part, "FNMA/FHLMC

UNIFORM INSTRUMENT."[4] The note is secured by a mortgage  in favor of Mortgage Plus

---

[1]Doc. No. 35.

[2]Doc. No. 49.

[3]*Id*. The loan was closed by Dyke, Henry, Goldsholl & Winzerling, P.L.C. *Id*. Defendant
has no relation to that firm, or to Mortgage Plus. *Id*.

[4]Doc. No. 48.

against Plaintiff's home in Pine Bluff, Arkansas.[5] The mortgage also has a line reading, in part,

"ARKANSAS - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT."[6] Paragraph 7 of

Plaintiff's Mortgage provides:

> Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering the Property to make repairs. Although Lend may take action under Paragraph 7, Lender does not have to do so.
>
> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.[7]

Defendant is in the business of servicing mortgage loans.[8] Defendant does not originate

residential mortgage loans; rather, the residential mortgage loans are transferred to Defendant

from: the loan originator; brokers; banks and thrifts; trading firms; or individuals.[9] As of January

31, 2008, Defendant serviced around 29,683 mortgage loans, both residential and small balance

commercial.[10] Of those loans, about 16,992 loans were secured by liens against residential real

---

[5]Doc. No. 49.

[6]Doc. No. 48.

[7]*Id.*

[8]Doc. Nos. 19, 33.

[9]Doc. No. 48.

[10]Doc. No. 48.

property.[11] The real property that secures the loans serviced by Defendant is located throughout the United States.[12] As of January 31, 2008, around 6,602 of the residential real estate loans Defendant serviced were in default.[13] An additional 991 loans were in bankruptcy as of that date.[14] On a daily basis, loans are added and removed from the pool of loans Defendant services.[15]

Defendant services the loan secured by the mortgage against Plaintiff's home.[16] On or about October 26, 2000, Plaintiff and Defendant's predecessor, Interbay Funding, L.L.C. ("Interbay"), entered into a Loan Adjustment Agreement.[17] Under the Loan Adjustment Agreement, effective with the monthly payment due December 1, 2000, Plaintiff's new monthly principal and interest payment was $1,769.71.[18] Under Plaintiff's note, as modified by the Loan Adjustment Agreement, the monthly payment was due on the first day of each month.[19] If a payment was received more than fifteen calendar days after it was due, the note provided for a late charge in the amount of 5% of the monthly payment.[20] Defendant acts as the lender's agent

---

[11]*Id.*

[12]Doc. No. 49.

[13]Doc. No. 48.

[14]*Id.*

[15]Doc. No. 49.

[16]Doc. Nos. 16, 26.

[17]Doc. Nos. 19, 33.

[18]*Id.*

[19]*Id.*

[20]*Id.*

with respect to collecting payments and applying the payments in a timely manner to the loan balance due, including loans in default.[21]

Plaintiff filed Chapter 13 Bankruptcy around November, 2000.[22] Plaintiff continued making payments on the loan, as required under Chapter 13.[23] On May 8, 2006, the Bankruptcy Court ordered that Interbay (Defendant's predecessor) "shall show upon its books and records that the debtor has paid all arrearages, interests, costs, expenses and claims set forth in the original and any amended proof of claim filed by or on behalf of the lienholder and that the debtor's mortgage is CURRENT including the mortgage payment due for MAY 2006 . . . ."[24] That order also directed Plaintiff to begin making his mortgage payment to Interbay beginning with the payment due for June, 2006.[25] Plaintiff alleges that Defendant did not comply with the Bankruptcy Court Order ("Bankruptcy Order").[26] Defendant admits that Plaintiff's loan was not treated as current after the entry of the Bankruptcy Order, but asserts that it did not receive a copy of the Bankruptcy Order.[27]

On June 6, 2006 -- about a month after the Bankruptcy Order directed Interbay to show on its books that Plaintiff's mortgage was current -- Chris Campbell, a manager at Defendant

---

[21]Doc. No. 26.

[22]Doc. Nos. 16, 26, 49.

[23]Doc. Nos. 16, 26.

[24]Doc. Nos. 16, 26 (emphasis in original).

[25]Doc. Nos. 16, 26.

[26]Doc. No. 16.

[27]Doc. No. 26.

Bayview Loan Services, allegedly advised Plaintiff that the payoff amount on Plaintiff's loan was $185,600.00, including attorney's fees and inspection fees that Plaintiff alleges are not allowed under the loan agreement.[28] Plaintiff asserts that Mr. Campbell falsely advised Plaintiff that his mortgage payments for the following months were outstanding: October, 2005; November, 2005; December, 2005; January, 2006; February, 2006; and March, 2006.[29] Plaintiff did not take any action in reliance on Defendant's representation other than continuing to pay his regular monthly payment in the amount of $1,769.71, plus a monthly late fee payment of $88.49,[30] but notes that he has been unable to refinance.[31]

Plaintiff received a discharge from bankruptcy on June 8, 2006.[32] On June 9, 2006, Plaintiff wrote Interbay Funding Services and made a request under the Federal Services Act to know the status of his account.[33] Defendant acknowledged receiving Plaintiff's letter, and in June 29, 2006 letter, noted that collection efforts were suspended from the time Plaintiff's letter was received.[34] Plaintiff alleges that Defendant did not respond to Plaintiff's request in a timely manner  under the Federal Services Act.[35]

On November 9 and November 27, 2006, Defendant sent Plaintiff letters attempting to

---

[28]Doc. No. 35.

[29]*Id.*

[30]The late fee was because Plaintiff regularly made his payments more than fifteen days after payment was due.

[31]Doc. Nos. 19, 33.

[32]Doc. Nos. 16, 26.

[33]Doc. No. 35.

[34]*Id.*

[35]*Id.*

collect an alleged debt.[36] The November 27 letter reads in part: "We have not received the 4/1/2006 and succeeding installments. This is a formal demand for payment . . . ."[37] Plaintiff asserts that Defendant's November 27 collection efforts were illegal in light of Plaintiff's Bankruptcy discharge.[38]

Plaintiff wrote Defendant on December 6, 2006, disputing that he owed the amount alleged by Defendant.[39] Plaintiff attached a copy of the Bankruptcy Order to his December 6, 2006, letter.[40]

On January 4, 2007, Defendant sent Plaintiff another letter that reads in part: "We have not received the 05/01/06 exceeding installments. This is a formal demand for payment of the total amount past due."[41] Plaintiff, however, had made his regular monthly payments of $1,769.71 after his discharge from bankruptcy.[42] Sometime in January, 2007, Defendant corrected its records to reflect that Plaintiff had made his monthly payments up to the payment due on January 1, 2007.[43]

Plaintiff filed suit against Defendant in February, 2007, on behalf of himself and others

---

[36]Doc. No. 2.

[37]*Id.*

[38]Doc. No. 35.

[39]Doc. No. 2.

[40]*Id.*

[41]*Id.*

[42]Doc. Nos. 19, 33.

[43]Doc. No. 2.

similarly situated.[44] Plaintiff alleges, among other things, that Defendant imposed fees that were

not expressly authorized in Plaintiff's Mortgage. Plaintiff is suing Defendant under various

causes of action, including the Fair Debt Collection Practices Act; the Truth in Lending Act; the

Real Estate Settlement Procedures Act; breach of contract; and the Arkansas Deceptive Trade

Practices Act.[45]

     The definition of the class Plaintiff seeks to certify has been a moving target. First,

Plaintiff identified a class in his original Complaint.[46] Plaintiff then filed an Amended Complaint

that set out an entirely different cause of action, and class definition.[47] In his Amended

Complaint, Plaintiff states that

> [t]he class consists of Plaintiff and all persons, whose loans were serviced by
> Defendant, or its predecessors, during the period from January 17, 2001 until
> present, inclusive, whose loans were in Default or treated as being in Default by
> Defendant and who incurred or were assessed late fees and/or Default-Related
> fees including, without limitation, fees denominated by Defendant as 'inspection
> fees' and attorney's fees.[48]

     Plaintiff then filed a Motion for Class Certification, asking the Court to certify two sub-

classes, one for claims arising under federal law, and one for claims arising under state law.[49]

Plaintiff defined the federal class as:

> those individuals who from three years before the filing of this matter until present,
> inclusive, whose loans were in Default or treated as being in Default by Defendant,

---

[44]*Id.*

[45]Doc. No. 35.

[46]Doc. No. 2.

[47]Doc. No. 35.

[48]Doc. No. 35.

[49]*Id.*

but not accelerated, and who incurred or were assessed late fees and/or Default-Related fees including, without limitation, fees denominated by Defendant as "inspection fees" and attorney's fees in alleged violation of TILA, RESPA, and the FDCPA.[50]

Plaintiff defined the state class as:

those individuals who from five years before the filing of this matter until present, inclusive, whose loans secured by property in Arkansas were in Default or treated as being in Default by Defendant, but not accelerated, and who incurred or were assessed late fees and/or Default-Related fees including, without limitation, fees denominated by Defendant as "inspection fees" and attorney's fees in alleged violation of state law.[51]

In his Brief in Support of his Motion for Class Certification, however, Plaintiff wrote that he did not question "whether such attorney's fees are expressly authorized. In fact, they are."[52]

Defendant responded to Plaintiff's Motion, giving many legitimate reasons why Plaintiff's Motion should be denied.[53]

Plaintiff filed a Reply to Defendant's Response.[54] Plaintiff, "[i]n light of the multiple red herrings presented by the defendant's Response,"[55] changed the class definition for the federal sub-class to:

those individuals who, from one year before the filing of this matter until present, inclusive, had consumer loans that were in Default or treated as being in Default by Defendant, but not accelerated, and who incurred or were assessed fees denominated

---

[50]*Id.*

[51]*Id.*

[52]Doc. No. 38.

[53]Doc. Nos. 48, 49.

[54]Doc. No. 57.

[55]Doc. No. 57.

by Defendant as 'inspection fees' and BPO[56]  fees in alleged violation of TILA, RESPA, and the FDCPA.[57]

Plaintiff then contended that he would, at the Court's discretion, further limit the federal class to individuals whose loan documents contain the same language as Plaintiff's. Plaintiff sets out that "the common question is whether those documents expressly authorize BPO and inspection fees."[58] Plaintiff did not address the state sub-class in his Reply.

## II. DISCUSSION

Under Rule 23 of the Federal Rules of Civil Procedure, a class action may be maintained if the plaintiffs meet the prerequisites set out in Rule 23(a), and the requirements of at least one subdivision of Rule 23(b).[59]

Even without a thorough analysis under Rule 23, there are potential problems with Plaintiff's proposed class. It appears that Plaintiff's TILA claim  may not be typical of the claims of the class. "Plaintiff alleges Defendant violated TILA when it failed to give Plaintiffs correct disclosures and instead provided an incorrect notice that stated a higher loan balance due to Defendant's allegedly improper fees."[60]  Plaintiff also points out that "the TILA requires creditors to disclose . . . ."[61] There

---

[56]BPO stands for broker price opinion.

[57]Doc. No. 57.

[58]*Id.*

[59]Fed. R. Civ. P. 23. Rule 23(a) provides that members of a class may sue on behalf of class members only if:
> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

[60]Doc. No. 38.

[61]*Id.*

is nothing in the record, though, to support a conclusion that Defendant is a creditor. It is generally a two-step process to determine if a party is a creditor under the TILA. The first step is to determine whether the party is a creditor in general.[62] The next step is to determine if the party is a creditor in the specific transaction in dispute.[63] Here, Defendant only serviced Plaintiff's loan. Unless the servicer is or was the owner of an obligation, the servicer is not treated as an assignee[64] and is not liable under TILA.[65] It is unclear how, based on the pleadings, Plaintiff would be a proper representative for a TILA claim.[66]

With respect to the class and a RESPA claim, Defendant points out that Plaintiff's brief in support of his Motion for Certification discusses RESPA in connection with a Services's duty to provide a timely answer to a qualified written request from a borrower.[67] Thus, any potential class member would have had to make a qualified request. But, the class definition does not require that a potential class member made a qualified request. It seems that only individuals who made a qualified written request would be appropriate potential class members.

Plaintiff asserts that the inspection fees and BPO fees were illegal because under Plaintiff's mortgage, those fees were not expressly authorized, as required by the FDCPA. First, it would be necessary to determine if Defendant imposed inspection fees or BPO fees on the potential class

---

[62]*Police v. National Tax Funding*, L.P., 225 F.3d 379, 411-13 (3rd Cir. 2000).

[63]*Id.*

[64]15 U.S.C. § 1641(f).

[65]*Ocasio v. Ocwen Loan Servicing, LLC*, No. 07-5410, 2008 U.S. Dist. Lexis 56289, at *5 (E.D. Pa. July 23, 2008).

[66]Defendant apparently does not originate residential mortgages at all.

[67]Doc. No. 49.

members. If Defendant imposed inspection fees or BPO fees on a potential class member, then it appears it would be necessary to ask that individual if he or she had actual knowledge whether those fees were "expressly authorized" under the mortgage.[68]  If a mortgagee had actual knowledge that an inspection fee or BPO fee could be imposed, that mortgagee would not be an appropriate class member.

This leads to questions about the numerosity of the potential class. Plaintiff's proposed class definition reads, in part, those "who incurred or were assessed fees . . . in alleged violation of TILA, RESPA, and the FDCPA."[69] The definition combines three causes of action -- thus, a potential class member should have a claim under TILA and RESPA and the FDCPA. Defendant services about 6,602 loans that are in default. Of the loans that are delinquent or in default, it appears it would be appropriate to consider only those loans and mortgages made using documents with the same language as in Plaintiff's note and mortgage. Further, it would be necessary to remove any loan that had been accelerated. Then, the class would be narrowed to those for whom Defendant was the creditor. Then the class would be further narrowed to those who made a qualified request under RESPA. Lastly, the class could consist of only those who did not have actual knowledge of inspection fees and BPO fees.

## III. CONCLUSION

---

[68]15 U.S.C. § 1692(f)(1) makes it illegal for a debt collector "to collect or attempt to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The Second and Third Circuits have recognized that "expressly authorized" does not mean that the charge must be set out in writing, but it does mean that the consumer must have had actual knowledge of the charge. See *Tuttle v. Equifax Check*, 190 F.3d 9, 15 (2d Cir. 1999); *Police v. National Tax Funding*, L.P., 225 F.3d 379, 408 (3d Cir. 2000).

[69]Doc. No.

Because, at this stage, serious problems with Plaintiff's proposed class are apparent, Plaintiff's Motion for Class Certification (Doc. No. 37) is DENIED without prejudice, and Motion for Hearing on Class Certification (Doc. No. 58) is DENIED without prejudice. Plaintiff's Motion to Compel (Doc. No. 40) is DENIED as MOOT.

IT IS SO ORDERED this 4th day of August, 2008.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE